May it please the Court, my name is James B. Fineman. I'm from Lynchburg, Virginia, and I represent Linda Scott in this matter. We've agreed to split our time ten minutes each, and if I have some time left over, I'd like to reserve it for rebuttal. All right, please watch the clock. Thank you, Your Honor. I want to summarize my client's position by making three points. One is about protecting the ability to opt out of a class action. Two, the choice of law analysis that's required in a class action litigation, whether it be trial or settlement. And three, the predominance issues under Rule 23. A court cannot exercise jurisdiction over out-of-state plaintiffs with no contact to the home form without giving them the right to opt out. That's the Phillips Petroleum case. In the class action context, the unnamed members of the class can sit back knowing their interests are protected by class representatives, class counsel, and the court. Here, a district court sitting in Los Angeles has all the cases from around the country transferred by virtue of an MDL process, and all the individual state class actions are stayed. Then a settlement is proposed. The problem arises because the statute of limitations is told in some states under the doctrine announced in the American Pipe case, but in those states like Virginia, which do not recognize American Pipe cross-jurisdictional tolling, the statute of limitations is told only if causes of actions under that state's laws have been pled by a certified class representative. Why wasn't it told when you filed the action? I mean, I looked at Casey, and Casey said, well, it's not going to be told by a putative class action raising other claims in some other jurisdiction. But here you actually raise Virginia claims in district court, so why didn't that toll the statute? Is there a case that would explain that? No, ma'am. No, Your Honor, not that I'm aware of. So we don't really know whether the statute of limitations would be told or not. I mean, Casey just did not appear to be on point. Well, it's the law that we have in Virginia, and if that issue is going to be litigated, as I said in that brief, that should be litigated, that issue should be decided in Virginia and not here, and I put that in that brief that the referral of that issue should be made to the court in Virginia and not here. I'm confused about the tolling issue. Ordinarily, the way a statute of limitations works is, say it's a two-year statute of limitations, means you have to file an action within two years. Tolling really doesn't come up unless an action is not filed within two years, and you need some tolling so that you can file it in, say, three years because one year was told. But here if the action was filed, why isn't that the end of it? Well, because what happened, what the court in Los Angeles did is release all claims except for people who opted out, and there was no chance. Okay. So what you've got is a bar. So your problem really isn't the tolling, it's the bar. Yes, sir. Because, you know, there was no class representative certified because all the claims were dismissed and there was no opportunity to certify Ms. Scott or the other named representatives as class representatives, and without them being certified under the Casey v. Merck cases, which is what we have, there is no tolling of the statute of limitations under Virginia law. So the class council, the class representatives in the court were required to protect the rights of the unnamed, absent Virginians, but instead they denied and they blocked every effort we made to protect our ability to opt out by simply, very simply creating a Virginia subclass with representatives asserting Virginia causes of action. We assert that that's error and it must be reversed. We think it's a question of law reviewable de novo by this court. So are you arguing that the district court erred in certifying the settlement class? Yes, Your Honor. And the reason is that it should have certified or created a subclass of Virginia claimants? Yes, Your Honor. And that would have resolved the whole thing. And the Amchem case says that when subclasses are required, it's error not to have them, and that's all that we were asking for in this case. So should the district court have made a choice of law analysis? The district court said, I'm not required for a settlement class. That's an error, Your Honor. The Phillips Petroleum case said that the choice of law analysis must be done. The constitutional limitations on choice of law apply in the class action setting no matter how difficult it is to adjudicate the cases of a large number of absent people. I mean, that's what the Phillips Petroleum case said, and I don't think the district court has the right to change that. With the Virginia claimants, I think there was something in your brief that they would have different statutory remedies than other claimants. Is that correct? That's correct. And what are those? Well, we have treble damages under the Consumer Protection Act in Virginia. I don't believe that that's – I'm not an expert on California law, but I don't believe that that's correct, and I don't believe that's allowed under California law. Also, we have minimum statutory damages of $1,000 for willful misconduct. I don't think that exists under California law. And the court said early on, well, if there was a – if somebody can show me a state that has treble damages or $1,000 minimum damages, that would make a difference. So then we showed it to them, and they said, oh, that doesn't make a difference. With all respect, from our perspective, the goal line kept changing every time we would try to assert something. And what was the average – so for the claims in the settlement, was what the individuals received less than they would have under Virginia statutory requirements? We believe so, yes, Your Honor. If the case were won, yes, we did. I think the average recovery is somewhere – and I'll be corrected if I'm wrong, but I think it's $300 to $350. So, you know, Phil Petroleum says the constitutional limitations on choice of law cannot be relaxed in a class action, no matter how difficult – You're saying because of the consolidation and the bar, the purchasers of these cars get around $300 each and they would have gotten around $1,000 each in Virginia? I think they would have gotten more in Virginia. I'm just talking about what the minimum statutory recovery would be in Virginia. I think they would have gotten much more. I think that they made a warranty under Virginia law that these vehicles get 40 miles per gallon and it cannot be met. And under Virginia law, when a warranty cannot be met, there's a full refund of the purchase price. And that's what we asserted in our complaint. And I'm watching my time. Do you want to reserve? You have three-some-odd minutes left. The other is for your co-counsel. Yes, Your Honor. The only other thing I just wanted to point out was that the court did a predominance analysis in the Espinoza case and found that all the state laws were – that there could not be a predominance because the state laws were so different. Then – and the court refused to certify a nationwide class. Then a settlement was submitted and the court said – did the same analysis and came to the exact opposite conclusion. We believe that's an opinion based on the Chancellor's foot, if I'm quoting the Supreme Court language correctly. And the Supreme Court case says that in the settlement context, you have to give heightened scrutiny to the predominance requirement, not relaxed scrutiny. And that's what we say happened on this record. Thank you. Thank you, Your Honor. I have roughly two and a half minutes, is that correct? Three minutes and 20 seconds. Good morning. I'm George Cochran, counsel to Appellants Ahearn and York. I'll try to reserve three minutes this morning. I want to focus on just one issue today, the award of attorney's fees. The core problem here is that the district court failed to base the fee award on the actual benefits obtained. This inquiry is key to the proper evaluation of any fee petition. An order that misses this fundamental point must be set aside. I had a lot of trouble going through the record and figuring out what the value of the settlement was because there's a lot of different calculations, and some of it seems to be based on what the claimants already had gotten under the LRP program. So can you, to start out, can you first explain to me what you think the value of the settlement agreement is and how you calculate that? What are the components? Well, Your Honor, you're correct in pointing out this very issue, and that's why we're here, is that the record is muddied because the court never took the time to require plaintiffs to meet their burden to specify and perhaps even use expert testimony to value their actual contribution. What's unique here is that, as you say, the defendants had already introduced a voluntary program designed to avoid lawsuits by giving them, making them whole, and adding even 15 percent for good measure because of the inconvenience. But the very day that the EPA announced its findings that their estimates were off and the LRP program was introduced, several of these lawsuits were filed and we were ready to go. Do you get to the point of how much more the people get under the settlement than they get under the voluntary program? Well, there are two enhancements that need to be valued. The first is that they actually obtained for the class is they had a longer claims period, which I think is the real benefit, and a lump sum payment option. And so that was equivalent to the LRP, right, because I thought that when they made that, so there would be some inherent value for getting a lump sum beyond the payout over time. Is that what we would have to include? I think the most generous way to put that, Your Honor, is that it would definitely require expert testimony. If they want to show any value added to converting the LRP to a lump sum payment, the longer claims period, we can now, looking back, way after the fee awards were made, make a proper estimate, I believe. Looking at the final tally of the claims, which we did not have at that time because they were under seal, or the final report wasn't even ready yet, the judge already made the awards, we now can look back and see that approximately $22 million, by my calculation, in lump sum claims during the extended period were made, not the $40 million predicted by the parties. So if you go by that measure. Is that a conversion of their LRP program, or is this new? So $22 million in new claims. And actual claims responding to, you know, via claim forms that would not have been made but for plaintiff's contribution. So basically what the settlement got the class was $22 million over what the manufacturer. Well, opposing counsel may differ. I think there might be a little added to. I can't hear you when you talk when I'm talking. I'm sorry. And you don't know what my question is. If I understand you right, what you're saying is the class got $22 million because of the settlement that they would not get, based on what the manufacturer agreed to give them before the litigation. Yes, Your Honor. Okay. Thanks. That's my calculation of the final tally, which reflects technically that, by the way, it's also a 30% claims rate as opposed to we contend it should have been an automatic payment, which would have been 100% participation. But technically that means the total fee award of about $9 million is 40% of the settlement's true value. Now, if you add the fees to the claims together, it still amounts to about 30% of the total paid by defendants due to class counsel's efforts. That's about $2 million over the benchmark, the 25% benchmark by my calculation. So what I want to emphasize in my remaining time is that these enhancements were never actually quantified by the court, and that's required under precedent here. And it caused confusion in the record, as Your Honor pointed out. The district judge, first of all, found, for example, that the Hunter and Brady fees were fair, quote, in the context of the amount the class may receive in the settlement, end quote. Moreover, the court stated elsewhere that total fees were far lower than the 25% benchmark. Your Honors, a district court can certainly make estimates in evaluating a fee request, but every assumption must have some basis in the record. And the record here shows just the opposite. Nowhere is the dollar value of plaintiff's enhancements discussed, much less analyzed. The reason is simple. Plaintiffs never produce specific objective evidence supporting the value of their contribution. Now, contrast that with the Sixth Circuit's decision in Shane, our supplemental authority, where the parties admit the expert report valuing the settlement, which was sealed there, was crucial. Nonetheless, plaintiffs continue to walk these muddy waters today. According to their own answer brief, quote, none of the appellants is actually challenging the amount of the recovery for class members, an extraordinary testament to the fairness of the settlement, end quote. Under the circumstances, Your Honors, we respectfully submit that plaintiff's contribution is more like an objector who enhances the value of what the defendants already agreed to provide. In those cases, the court places a heavy burden on the applicant to justify their fee request, and key to their success is quantifying their contribution. The court's failure to identify and to calculate the settlement's true value can't be corrected by handpicking the fee method either. Because this isn't a common fund and defendants paid the fee separately, the district court took the lodestar approach. But a lodestar still has to be adjusted up or down depending on a host of reasonableness factors, like the benefits actually obtained for the class. Only a superior performance that produces an exceptional result warrants a multiplier. So you probably have a little over two minutes left for rebuttal. Do you want to say that? I'm going to use it. Okay. Thank you. In that regard, defendants' reliance on Ferrero is misplaced. What they called confirmatory discovery or something like that, confirmation discovery, did they find anything different from what the manufacturer, the consumer advocacy group, and the government had already said? Not to my knowledge. There were eight months. Perhaps the opposing counsel can answer better, but that's one of our points, Your Honor. It's like a week after the MDL was organized, they had reached a tentative settlement already. Another eight months was devoted to confirmatory discovery and basically settlement negotiations, you know, far from an exceptional result. And back to Ferrero. You're saying that those hours were just churning. No, I wouldn't go that far, Your Honor. You do need to have confirmatory discovery, and you do. Settlement negotiations on behalf of the class is very important. My point is it doesn't meet the standard of exceptional performance for a multiplier. Those hours were legitimate but didn't get any additional money. Shouldn't have a multiplier. Didn't result in an exceptional enhancement to warrant a multiplier. So do you disagree that the district court applied the Lodestar that had a multiplier just for some of the counsel, is my recollection. Do you agree with the Lodestar approach, or do you also disagree with that? Well, the circuit allows it to go either way unless it's a common fund, I believe. Then you pretty much have to do the percentage approach. So that's within the court's discretion, I believe. So your only disagreement is with the multiplier that was applied to a portion of the fees? Yes, Your Honor. Yes, and that's my point. On Ferrero, the court went on to make a specific finding that the relief obtained was not just meaningful, it was excellent. Nowhere is such a finding ever made regarding plaintiff's actual enhancements. Yet multipliers ranging from 1.22 to 1.55 were awarded. How much of the award that is somewhat over $9 million is attributable to the multiplier? Well, McEwen-Wright got $2.8 million, that's a 1.55 multiplier. Higgins-Berman got 1.22 multiplier, and they got $2.7 million. Okay. It's our position that we've briefed that the non-settling plaintiffs didn't contribute enough to even justify a reduced load star, but those are the two main players that were specifically awarded load stars. Okay. Now you're into your co-counsel's time. I can't let you do that. My last statement is that the error is magnified because it's a claims-made settlement. That's when you have to go further in the inquiry by asking how much of the theoretical benefits were actually used. Thank you, Your Honor. Good morning. I'm Elaine Cusel, representing Kelly Espinoza for the plaintiffs' affilies. I will speak for 10 minutes, and I'm going to reserve the time for Mr. Morgan, who is going to respond to Mr. Fineman, who represented Ms. Scott on the appeal. The district court did not abuse its discretion in certifying this class. This litigation and this settlement is the product of an extraordinary open and clear process. Why isn't it a real problem that the Virginians could have gotten a whole lot more money each if they had been separated out? I absolutely don't believe that to be the case. Well, why isn't it? Why isn't it the case? First of all, they could have opted out. So certainly, there was no problem with the individuals. That's not the test for whether the district court appropriately certified the class. I mean, everyone could always opt out, right? Right. And let me just, before I go there, that's the issue, that's the Scott appeal, and that's what Mr. Morgan is going to be responding to. So in the Espinoza case, the district court correctly recognized that under MOTSA, it had to do a choice of law analysis. Correct. It did the choice of law analysis and said, I can't say that California law only applies to all claims. We have to look at the other states' laws. Therefore, there's no predominance. And then for the settlement class, it said, I don't have to stick with that as a matter of law because settlement classes are different and there's no management problems. Now, opposing counsel says, Amchem says, no, that's erroneous. You don't have to look at management problems. But, in fact, as he points out, there's a heightened scrutiny to protect absent class members. So my concern is that the district court's failure to go through the MOTSA steps, merely because it was a settlement class, means that it made a legal error in certifying that class. Can you explain to me why that's not a concern? Well, first of all, this court went through a laborious process of evaluating the settlement. It was nine months from the preliminary settlement. Right, but we're at the classification point, and that's the question I have, not whether the settlement was fair. I mean, Amchem is clear that a fairness analysis of the settlement can't substitute for the proper classification analysis. Right. Well, in MOTSA, the issue was whether the ‑‑ it's about manageability, correct? So you look at whether ‑‑ No, that wasn't the only issue. The choice of law analysis, it said I can't say that one state's law predominates, so therefore you can't certify this class. There's no predominance. There wasn't a discussion of manageability. Right, well, the other issue there was whether the ‑‑ excuse me. Whether ‑‑ I'm sorry. One of the issues with MOTSA that isn't ‑‑ Is this the issue that you indicated co‑counsels prepared to discuss? No. They sought to apply ‑‑ As to the predominance analysis? No, no, I'm sorry. MOTSA is distinguishable because there it involved class certification in a litigation context, as Your Honor has properly recognized. But they sought to apply the law of California extraterritorially to the consumer transactions in 43 other jurisdictions. There the court then found that the variances of state law overwhelmed the common issues. Right, and in the Espinoza, its original decision, it applied MOTSA. It says MOTSA's on all fours. Therefore, I can't certify the class. We're not trying to apply the law externally here. This is going to be a contract, and in a contract between the parties. Right, it's a settlement, so it's a certification of the class for settlement, which AMCAM says, other than the manageability issue, requires exactly the same analysis, in fact, even a heightened scrutiny. Which is a fairness analysis. No, it says it's not the fairness analysis. It said the fairness analysis is separate and should not ‑‑ It says if fairness inquiry under 23E controlled certification eclipsing Rule 23A and B and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed. So it expressly says you can't have a fairness inquiry substitute for the class certification analysis. Right, but this case is much more like the case that it's actually on all fours, which is Hanlon v. Chrysler, which is that although some of the class members may possess slightly different remedies based on some statutes or common law. Well, Virginia apparently has significantly different remedies. That's what counsel says. Is that incorrect? I believe so. What, is the statutory remedies that he cited incorrect? No, actually, in Hanlon v. Chrysler, they said exactly the same statutes, which is variance of a generally homogenous collection of laws, which include product liability, breaches of express and implied warranty, and lemon laws. Well, the court's analysis in Espinoza was that they weren't homogeneous. It looked at the appendix of the varieties of the state statutes and concluded that they weren't sufficiently similar. And that was in a trial context, and that was about manageability. So I understand you're taking the position that classification is analyzed differently in this element context than in the litigation context, but the Supreme Court seems to be contra, so how are we supposed to make that differentiation in light of AMCM? Well, in AMCM, once again, that was about, and I think it's notable to look at the, AMCM is also a case that involved a variety of different types of claims, personal injury claims, a variety of different positions that people were going to be in, whether it was future claims, a variety of different positions of liability and whether there was going to be an ability to pay. Here, every claimant is getting a benefit through contract. The class members were uniformly happy. How are the Virginia plaintiffs, the absentee Virginia plaintiffs protected if, in fact, their state promises them $1,000 minimum? How are their interests protected? I mean, that's supposed to be part of the classification. Well, the opportunity to opt out is part of the. So you're saying that opt out is the protection of absent class members in the class certification analysis. Is that your position? I believe that the position is that the court did evaluate whether it could proceed in this manner. Do we know, based on the record that we have, whether or not the Virginia plaintiffs could have gotten more? Well, I will leave that to my co-counsel. It sounds like the Virginians would get a minimum of three times as much. I don't believe that to be the case. And I believe there's been other litigation in Virginia, but I will leave that to my co-counsel to discuss. With regard to the attorney's fees, what documents primarily did the courts look at that we need to look at that's in the record? Is it the exhibits attached to a declaration of Paul King in support of joint motion for final proof of class settlement that lays out essentially the claim rates and amounts and all that for Kia and Hyundai? Yes, it's an exhibit, which I have here. It's HMA. I can give you the site to it, but the. No, I have it. I just want to make sure that I'm looking at the right record. SCR 397. Right. And it goes through and I just want to correct the record that Mr. Cochran said. The actual amount is 43 at that time was $43 million. And does that exclude the amounts that were already made available to people in the LRP program before the settlement? Yes. That's additional funding that was provided through the settlement. So if part of the settlement was a conversion of the LRP program to a lump sum and that was an equivalent compensation, does it exclude that the conversion to a lump sum? That's additional funding. So I guess would that exclude the equivalent? In other words, if I'm given a stream of payments voluntarily and then I have the option to convert it to a lump sum, that may have some value, but it's not the whole value of the lump sum. Well, these are additional people that came in. And another factor that another value that the settlement had was we extended the claims period for two years because the lifetime. So was there any expert testimony of the value of that to the class of the two years or not, but that does have value. And there was also a additional funding in the settlement for a two year, for a particular type of vehicle that was that the four by four pro four by 40 program, which was a $2 million there. And in the additional since, since the the class since that time, 43 million, at least so far from our discussion. Oh, I need to, I'm running out of time. Please answer Judge Kleinfeld's question. The 43 million. Yes. At least so far includes lump sums, even though the people who get the lump sums would otherwise have gotten a stream of income. And it does not include a reduction for the stream of income they would have gotten anyway, or reduction of the stream to present value. Also, there is no quantification of in the record of how much the extended claim period is worth. Have I got that right? I believe that's, that's true. Any other questions? Okay. Good morning, Your Honor. It's just a judge when pointed out, I think some of the hard questions were directed to my co-counsel that should have, should have come to me. I thought you're the one who's prepared to discuss the predominance issue. So let me, before I forget, get the answer that I asked counsel, do we know from this record that the Virginia plaintiffs or class members   And in fact, I don't know that the Virginia plaintiffs or class members would have I think the record is going to be critical to the, to the court's analysis here that the court addressed that issue. Obviously Mr. Fineman argued that they would be entitled to enhanced remedies under Virginia law. Judge Wu was very aware of that and found that any enhanced remedies would be highly speculative under the fact record that was presented to the speculative in this context. I mean, we don't know whether they would have won their case or settled their case, meaning all of those remedies required a finding of willfulness or something akin to punitive damages. And that despite the long period of confirmatory discovery, no counsel raised any facts that suggested that would be provable. As I understand it, the confirmatory discovery just confirmed that things were as the consumer advocacy group that's raised this in the first place and the federal government and the settling parties in this case had already established. And, and as for the willfulness were, was willfulness also established by those sources? In fact, the primary goal of the confirmatory discovery was determined if there was evidence of willfulness that would justify a change in the settlement terms from the plaintiff's counsel's point of view. After going through all that process and having 40 some different firms not involved in the settlement, also evaluate that confirmatory discovery, they all agreed that there was no basis for punitive damages or an enhancement to the settlement. So it's a large record. And so could you cite me to where the court made a finding that the Virginia plaintiffs would not, were not likely to get the additional amounts? Sure. Your Honor, that's at the Scott excerpts of record at page 64. And of course, layered on top of that issue was counsel, Mr. Fineman's own arguments to the trial court that those Virginia consumers would already be barred from bringing these claims under the Virginia's own Casey decision. So the court had a second reason to discount the probability of those enhanced damages was that plaintiff's counsel himself was arguing those claims were already time barred. So he, so the court said further as the settling parties have pointed out repeatedly, it appears highly speculative that Virginia plaintiffs would have been able to succeed on the merits of these purportedly better remedies. Is that the language you're referring to? But there's no reasoning on this. Is that correct? He just made that statement. In there were, I don't have the record for every point where he addressed fairness and talked about what the confirmatory discovery showed, but you know, this was a conclusion based on a voluminous record. This was part of its fairness determination, or was it part of the classification determination? This was part of the fairness determination. It's part of the fairness determination. So at the point where he did the classification decision, my recollection was he notes the problem with Virginia, but doesn't resolve it. And so he ultimately determines after the, I guess the confirmatory discovery that it would be speculative. So I guess the question is, does that, does that make the classification let's assume that we, we credit this statement in that the Virginia plaintiffs rights didn't have to be protected because they couldn't have done any better. How do we then analyze a classification decision where he didn't make that determination? Is that like a, a, a no prejudice type of analysis or what's the appropriate way to look at that? Two points, Your Honor. First there is another reference where he talks about the damages being highly speculative. That's at Scott 5354 and I do not have in front of me where that statement was made. I don't know if that was at the preliminary fairness hearing at which point the court would have been addressing certification. I apologize for not having that at my fingertips. Help me on something here to make sure I understand this. Virginia has a willfulness requirement. California doesn't. Is that right so far? Well, I don't want a long discussion. California also has statutes where you can get enhanced damages for willfulness or under common law. Settled with it. You settled the case without those enhanced damages for willfulness. Correct. Okay. Now I'm trying to think what willfulness would mean in this context. Without willfulness it would mean the manufacturers just made a mistake in over claiming miles per gallon. Willfulness would mean they lied about it. Did the confirmatory discovery or something else show an innocent mistake as opposed to lying about it? That was the consensus of counsel involved. Correct, Your Honor. How many months did you spend doing confirmatory discovery? Approximately eight months. And again, that was under the supervision of not only the settling counsel but Judge Wu, the liaison counsel and the 40 to 50 other firms who were not parties to the settlement who were frankly fly specking this for any changes that they think were warranted. You know, and in the end almost every one of those counsel except Mr. Fair and adequate. I'd like to go back if I may for, well, first I address any questions, but going back to judge Acuto to your questions about the overlap of the litigation analysis of the choice of law issue and the settlement analysis, I think clearly the courts have said, yes, you know, the rule 23 standards apply in either context. I think the question is, is the inquiry slightly different depending on the context and maybe yield different answers. And I think we have a good example on the record here of how that plays out. Well, the Supreme Court said the manageability concern is different, but other specification of the rule, those designed to protect absentees demand undiluted, even heightened attention in this element context. Right. So here we have an instance where the judge said, I'm going to assume that possibly all these laws of all 50 States could apply. I found on the record that you're essentially, the defendants are giving a hundred percent compensatory damages. And that's at the record at Scott excerpts record 53 and 54. So no matter what differences there were among state laws, for instance, in standards of proof, they wouldn't matter because the defendants were agreeing to give a hundred percent compensatory damages. Then you move to, well, do some of these States allow enhanced damages for punitive situations or willfulness? And there, the judge also made a factual finding that despite all of this confirmatory discovery, those would have been highly speculative. That was later from what you were correct. That was at the fairness of the settlement as opposed to at the class certification. I can't say that with a hundred percent certainty that it wasn't made in both contexts, but I certainly, it was made later. So then you have a situation where the judge has said, well, despite whatever differences there are among these laws, it wouldn't be outcome determinative in the context of this settlement because there's a hundred percent compensatory damages and no record evidence that would support the enhanced damages. So I think Your Honor's question may raise very difficult questions in another context, but not on this factual record. And I would say on Schutz, I mean, the rights of a defendant, the comments about the plaintiff's absent class member's rights were sort of an aside. And what they did say was that it's minimal due process and what their, those minimal due process rights only include the right to opt out. And so, you know, I think what Judge Wu did here and, and evaluating all the claims and saying that the plaintiffs didn't have a realistic chance on this factual record of doing better, fit clearly within what Schutz contemplated in preserving the rights of absent class members. All right. Thank you. Thank you. Okay. We'll hear from Mr. Feidman. Thank you, Your Honor. With regard to wilfulness, you know, what the allegations that the government made and that what we would follow is that they made their testing, they did their testing going downwind on a track. They did their testing using special tires. They did their testing on certain temperatures that would enhance their ability to claim 40 miles per gallon. We think that's willful. Our experts also would have shown that we believe, and we submitted discovery. Downwind, special tires, and what was the third thing? The temperature was beneficial to them doing their tests and that this was contrary to the regulations, the federal regulations on how you're supposed to do this. And that was all in the United States complaint. So opposing counsel says eight months of lawyers scrutinizing the discovery and the conclusion was there was no evidence of willfulness and the district court agreed. So, therefore, Virginia plaintiffs could not have gotten the enhanced damages. What's wrong with that? Well, I don't believe it. I mean, the settlement was announced first and then we're going to go try to find the evidence. I mean, with all respect, I think we're putting the cart before the horse and, you know, it led, that's what we think. Was the settlement that was announced first, did that include how much money the lawyers would get? No, I don't think so. No, sir. So if the, if opposing counsel is correct, there's no evidence of willfulness in the record. Let's just assume that's correct. Virginia plaintiffs were fully compensated then for what they could get under state law. Is that correct? No, ma'am. No, Your Honor. That's not, I don't believe so. That's why, you know, I've been doing this law for 30 years in Virginia. I came out here to oppose this. I had everybody in the country saying that Virginia law was something, even though they've never tried a case in Virginia. I'm the only one that's done this in Virginia. What record evidence can I look to for that proposition? Do you have a record site? I don't have a record site, but it is in there. I submitted a declaration on what I have done in the case law in Virginia. It's in the record. I'm sorry I cannot give you the page number, but the cases in my reputation for these types of cases as decided by Virginia courts is in there. The other thing, I just want to make it clear that when it goes back to the ability to opt out, absent class members who are not named representatives cannot because the statute of limitations has expired by the time we've gotten to this point, and no Virginia cause of action has been pled. So at that point, and no class representative asserting Virginia cause of action has been pled, then the court dismisses all the cases, and then the ability to litigate the Virginia class to establish that becomes worthless, and then everybody's left with a Hobson's choice of opting out, but the statute's expired, and that's just not the law. And then on the final point is on the certification, which has nothing to do with the fairness issue, the judge made one ruling in Espinoza on the exact same analysis, and then when there's a settlement context, he relaxed it and made the exact opposite ruling, and that is contrary to what Amchem says, and we ask the court to reverse it. Thank you. It's been an honor to be in your court. We thank you both, you all for your argument in the case of Espinoza and Hyundai versus Ahern is submitted and we're adjourned for this morning.
judges: Kleinfeld, Ikuta, Nguyen